UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x
CHRISTIAN KILLORAN, on behalf of his son,
A.K., CHRISTIAN KILLORAN, and TERRIE
KILLORAN,

                              Plaintiffs,

   -against-

WESTHAMPTON BEACH UNION FREE
SCHOOL DISTRICT, MICHAEL RADDAY, as
Superintendent, MARY ANN AMBROSINI, as
Director of Pupil Personnel, SUSANNE
MENSCH, JOYCE DONNESON, and HALSEY
STEVENS,

                              Defendants.
----------------------------------------------------------------------x

**REPORT AND RECOMMENDATION**
20-cv-269 (JS)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court, on referral from the Honorable Joanna Seybert, for Report and Recommendation, is Defendants' motion to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction and failure to state a claim. *Pro se* Plaintiffs Christian Killoran and Terrie Killoran, individually and as parents to A.K., their child with Down syndrome (together, the "Plaintiffs" or "Parents"), commenced this action against Defendants Westhampton Beach Union Free School District ("Westhampton" or the "District"), Michael Radday, Mary Ann Ambrosini, Susanne Mensch, Joyce Donneson and Halsey C. Stevens (collectively with the District, "Defendants") by way of Complaint dated January 16, 2020, alleging violations of (1) the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*; (2) the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; (3) Section 504

1

of the Rehabilitation Act of 1983 ("Section 504"); and (4) 42 U.S.C. § 1983 ("Section 1983") with respect to Plaintiffs' due process and equal protection rights for the 2019-2020 school year. *See* Complaint ("Compl."), Docket Entry ("DE") [1]. On May 15, 2020, Defendants filed their motion to dismiss, which Plaintiffs oppose. *See* DE [12], [16], [18], [19]. On October 26, 2020, Judge Seybert referred Defendants' motion to this Court for a Report and Recommendation as to whether it should be granted. For the reasons set forth herein, the Court respectfully recommends granting Defendants' motion.

## I. BACKGROUND

Unless otherwise indicated, the facts set forth herein are taken from the Complaint, as well as the related New York State Administrative Due Process Complaint filed January 9, 2020 and incorporated by reference into the Complaint, and are accepted as true for purposes of the instant motion. Plaintiffs have filed numerous administrative proceedings and multiple actions in this Court. In the interest of brevity, only the proceedings relevant to the issues presented in Defendants' motion are discussed below.

### A. Plaintiffs' January 9, 2020 Administrative Due Process Complaint

The IDEA claims asserted in this litigation were initially addressed in Plaintiffs' Administrative Due Process Complaint, filed with the New York State Department of Education, Westhampton Beach School District, on January 9, 2020, setting forth five contentions that: (1) Defendants deprived A.K. of a free and appropriate education ("FAPE"); (2) Defendants violated A.K.'s IDEA-based rights by

failing to implement his Individualized Education Plan ("IEP") within the least restrictive environment ("LRE"); (3) Defendants predetermined A.K.'s educational program and placement, in violation of the IDEA; (4) Defendants failed to consider the Parents' concerns and inputs, and allowed the Committee on Special Education ("CSE") Chairperson and Director of Pupil Personnel to unilaterally craft A.K.'s IEP; and (5) Defendants retaliated against Plaintiffs for their lawsuits against the District by refusing to educate A.K. within the general education setting and within his home community. At the time of filing, A.K. was a seventeen-year-old boy who, as set forth above, was born with Down syndrome. Compl. Ex. P-1 ("Admin. Compl."), DE [1-1], ¶ 1. A.K., classified as an "alternately assessed" special education student, is enrolled within the District. Admin Compl. ¶¶ 3-4.

### 1. Plaintiffs' Claim That Westhampton Denied A.K. a FAPE

Initially, the Administrative Due Process Complaint alleges that Westhampton deprived A.K. of a FAPE, as required by the IDEA, by denying him an "appropriately ambitious" IEP as a result of inappropriate and incorrect determinations of his present levels of performance ("PLEPS") and a failure to align his IEP with "grade level learning standards," as well as access to the general education curriculum. S*ee* Admin. Compl. ¶¶ 6-10, 23-26.

In support of these claims, the Parents rely in part on three CSE meetings the District held in the months prior to the 2019-2020 academic year. According to the CSE meeting transcript, Plaintiffs questioned the CSE members as to whether Westhampton provided A.K. with some semblance of a "general education

3

curriculum," even if modified. *See id.*, 2019 CSE meeting transcript excerpts, at 4-6.[1] The Parents argue, as a result of those conversations, that what they characterize as the District's refusal to grant A.K. access to the general education curriculum "preempted" the CSE from developing an appropriately ambitious IEP. *See id.* ¶ 14. Citing additional CSE meeting transcript excerpts, *see id.* at 7-9, Plaintiffs argue that A.K.'s PLEPS were inappropriately assessed and drafted, thereby "preventing the facilitation of a FAPE that is appropriately ambitious," because A.K.'s goals were not aligned with grade level learning standards. *See id.* ¶¶ 18, 22.

### 2. Plaintiffs' Claim That A.K.'s IEP Was Not Implemented in the LRE

Plaintiffs' second claim in its Administrative Due Process Complaint is that Westhampton violated A.K.'s IDEA-based rights because his IEP was not implemented within the LRE. The Parents assert that the doctrine of LRE requires that a student not be removed from either the general education setting or his home district unless the utilization of his home district's special education resources remain incapable of sufficiently addressing his unique and individualized needs. *Id.* ¶ 27. According to Plaintiffs, the LRE represents a "strong statutory presumption" favoring inclusion within the general education setting and a student's home district. *Id.* ¶ 29. Despite this presumption, Westhampton failed to attempt to utilize its full range of services or placements, including what the Parents refer to as a "hybrid program," and thereby failed to comply with the requirements of the LRE. *See id.* ¶ 30; 2019

---

[1] Plaintiffs' citations to the CSE transcript in their Administrative Complaint are not contained in numbered paragraphs. As such, for purposes of this Report and Recommendation, all references to the CSE transcript Plaintiffs cite are to page numbers in the Administrative Complaint.

4

CSE meeting transcript excerpts at 13-16. Moreover, Plaintiffs assert that the District failed to attempt to satisfactorily address A.K.'s unique and individualized educational needs internally, though it remained "fully capable" of doing so. *See id.* ¶¶ 36-41. Specifically, Plaintiffs point to Westhampton's "newly formed," post-elementary "alternately assessed" special education class, which they argue evidences the District's ability to satisfactorily educate A.K. within-district. *See id.* ¶ 42.

### 3. Plaintiffs' Claim That Westhampton Predetermined A.K.'s Educational Program and Placement

Plaintiffs' third claim argues that Westhampton failed to "meaningfully explore even the possibility of educating [A.K.] within the LRE," by failing to consider its ability to employ its special education resources toward A.K.'s individualized needs, failing to provide A.K. access to the general education curriculum for purposes of facilitating appropriate curriculum modification and "refus[ing] to even consider placing [him] within the general education environment, as well as his home school district," thereby evidencing the District's predetermination as to A.K. *See id.* ¶¶ 48-51. In support of this claim, Plaintiffs argue that Westhampton did not require the general education CSE member to attend CSE meetings, that the District dismissed a CSE member prior to soliciting a placement recommendation, that it failed to collaborate with CSE members and that it failed to abide by evaluative reports. *See id.* ¶¶ 52-54; 2019 CSE meeting transcript excerpts at 21-22. Moreover, Plaintiffs argue that Westhampton adopted a previous CSE recommendation "without conducting any independent analysis whatsoever" for the 2019-2020 academic year.

5

*See id.* ¶¶ 55-57; 2019 CSE meeting transcript excerpts at 23. Finally, the Parents assert that the District's predetermination of A.K.'s education placement is evidenced by its failure to invite to the CSE meetings the school district representative to whom the CSE Chairperson ultimately recommended placement, in violation of the requirement that an out-of-district representative attend a CSE meeting at which an outsourced education placement is recommended. *See id.* ¶¶ 58-63.

### 4. Plaintiffs' Claim That Westhampton Failed to Consider the Parents' Views, and the CSE Unilaterally Crafted A.K.'s IEP

In their fourth claim, Plaintiffs argue that Westhampton violated A.K.'s IDEA-based rights when it failed to consider the Parents' concerns and inputs, as well as when it allowed the CSE Chairperson and Director of Pupil Personnel to unilaterally craft the complainant's IEP. *See id.* ¶¶ 64-71; 2019 CSE meeting transcript excerpts at 24-26.

### 5. Plaintiffs' Claim That Westhampton's Refusal to Educate A.K. Within the General Education Setting and His Home Community Amounts to Retaliation

Plaintiffs' final claim in their Administrative Due Process Complaint asserts that the District violated A.K.'s IDEA-based rights by maintaining an "abject refusal to even consider educating the complainant within the general education setting and his home community," thereby evidencing retaliation against Plaintiffs "for commencing federal lawsuits against the defendant district." *See id.* ¶¶ 72-73.

Plaintiffs' Administrative Complaint sought a finding from an Impartial Hearing Officer ("IHO") that the District violated A.K.'s IDEA-based rights, as well

6

as an award of compensatory, "back end" education, with an order that Westhampton hire Dr. Kathleen Feeley, a consultant on inclusion, to supervise the implementation of the Parents' proposed "hybrid program," in an effort to avoid "sending [A.K.'s] fate back to the very same party (CSE) that committed the violations against him." *See id.* 27-28.[2]

### B. Administrative Hearings and Appeals

On November 15, 2019, IHO Kenneth Ritzenberg dismissed Plaintiffs' administrative action. *See* Compl. ¶ 6. Plaintiffs appealed that decision to the Office of State Review, and State Review Officer ("SRO") Justyn Bates partially overturned the IHO's decision, remanding the issue of whether the District provided A.K. a FAPE to the IHO for further adjudication. *See id.* ¶¶ 7-8; December 26, 2019 Decision of SRO Justyn Bates, DE [12-4], 21-22.

On January 7, 2020, Defendants' counsel informed Plaintiffs that the District planned to appeal the SRO decision pursuant to Article 78 of the New York State Civil Practice Law and Rules, and therefore that the remanded due process hearing would be automatically stayed. *See* Compl. ¶ 15. Nevertheless, on April 24, 2020, the remanded hearing on Plaintiffs' Administrative Due Process Complaint commenced, and the parties are currently addressing disputes regarding the scope of the hearing. *See* Memorandum of Law in Support of Defendants' Motion to Dismiss ("Def. Memo"), DE [12-2], 8.

---

[2] This relief is sought in the unnumbered paragraph contained on pages 27-28 of Plaintiffs' Administrative Complaint.

7

### C. Plaintiffs' Complaint in This Court

As set forth above, the Complaint in this action asserts four causes of action. Initially, Plaintiffs claim that Westhampton violated A.K.'s IDEA-based rights for the 2019-2020 academic year when it predetermined his educational program and placement, failed to undertake meaningful analysis regarding its ability to educate A.K., failed to educate him within the LRE and failed to develop and implement a FAPE that was appropriately ambitious by not providing him access to the general education curriculum, inappropriately formulating PLEPS and failing to align A.K.'s academic goals with appropriate learning standards. *See id.* ¶¶ 24-48.

Second, Plaintiffs allege that Defendants violated the ADA by "employ[ing] a widespread and discriminatory practice of reflexively outsourcing the post-elementary education of 'alternately assessed special education children,'" which Plaintiffs assert deprives such students of an education within the LRE, and specifically in the general education setting and as close to home as possible. *See id.* ¶¶ 59-74. Plaintiffs further argue that such predetermination with respect to A.K. is in retaliation against Plaintiffs for their numerous actions filed against the District. *See id.* ¶¶ 75-83.

Plaintiffs' third cause of action argues that Defendants violated Section 504 via the District's discriminatory policy of "outsourcing" A.K.'s educational placement based upon his "disability as an 'alternately assessed special education student.'" *See id.* ¶¶ 84-97.

Finally, in their Section 1983 cause of action, Plaintiffs argue that Defendants violated A.K.'s due process rights under the IDEA by "outsourcing" his educational placement, as well as his equal protection rights, by providing a "post-elementary 'alternately assessed special education class'" for two middle school students in the District, but refusing to do so for A.K., who Plaintiffs argue is "similarly situated" to those students. *See id.* ¶¶ 98-142.

Plaintiffs' Complaint seeks a declaratory judgment that Defendants violated the IDEA, the ADA, Section 504 and Section 1983 for the 2019-2020 academic year, as well as compensatory, punitive and "compensatory education" damages. Further, the Parents seek an order compelling Defendants to implement an IEP for A.K. within the LRE.

Defendants move to dismiss the Complaint on the grounds that this Court lacks subject matter jurisdiction over the claims asserted and, in the alternative, that the Complaint fails to state a claim upon which relief can be granted. *See* Def. Memo. In response, Plaintiffs voluntarily withdrew their IDEA-based claims, set forth in their first cause of action, to exhaust administrative remedies. *See* Plaintiffs' Affidavit in Opposition to Defendants' Motion to Dismiss ("Pl. Opp."), DE 18. The ADA, Section 504 and Section 1983 causes of action remain.

## II. LEGAL STANDARDS

Defendants move to dismiss for lack of subject matter jurisdiction and for failure to state a cause of action, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) and 12(b)(6). As the Court recommends granting Defendants'

9

motion for lack of subject matter jurisdiction, it does not analyze the parties' contentions with respect to the viability of Plaintiffs' causes of action pursuant to Rule 12(b)(6) for purposes of this Report and Recommendation.

Under Fed. R. Civ. P. 12(b)(1), a federal court must dismiss a claim when it lacks jurisdiction over the subject matter of the action. *See* Fed. R. Civ. P. 12(b)(1); *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.") (citation omitted). The party asserting subject matter jurisdiction has the burden to prove the court's jurisdiction by a preponderance of the evidence. *See Vailette v. Lindsay*, No. 11-cv-3610, 2014 WL 4101513, at *3 (E.D.N.Y. Aug. 18, 2014) (citation omitted).

In deciding a motion to dismiss for lack of subject matter jurisdiction, the court must assume that all factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *C.K. v. Bd. of Educ. of the Westhampton Beach Sch. Dist.*, 185 F. Supp. 3d 317, 324 (E.D.N.Y. 2016) (citation omitted). Further, the court may refer to evidence outside the pleadings, such as affidavits, to resolve the jurisdictional issue. *Forbes v. State Univ. of New York at Stony Brook*, 259 F. Supp. 2d 227, 231-32 (E.D.N.Y. 2003) (citations omitted).

### III. DISCUSSION

Defendants assert that the Court lacks subject matter jurisdiction over all of Plaintiffs' claims – not just those under the IDEA – because of their failure to exhaust

10

their administrative remedies. *See* Def. Memo, 8-11. Plaintiffs counter that administrative exhaustion would be futile under the circumstances due to the passage of time and Westhampton's indication that it may seek review of the SRO decision that partially reversed the dismissal of the Administrative Due Process Complaint, which will only further delay a resolution. *See* Compl. ¶¶ 16-22.

"Under the educational scheme of the IDEA . . . parents of students with disabling conditions are guaranteed 'both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate.'" *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008) (quoting *Honig v. Doe*, 484 U.S. 305, 311–12, 108 S.Ct. 592, 598 (1988)). In this regard, "[p]arents may request a hearing to present complaints relating to the 'identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education.'" *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 112 (2d Cir. 2004) (quoting 20 U.S.C. § 1415(b)(6)). Under New York law, parents may avail themselves of two tiers of administrative review:

> First, an impartial hearing officer is selected from a list of certified officers and appointed by the local board of education or the competent state agency to conduct the initial hearing and issue a written decision. That decision can then be appealed to a state review officer of the New York Education Department.

*Cave*, 514 F.3d at 245 (citing *Heldman on Behalf of T.H. v. Sobol*, 962 F.2d 148, 152 (2d Cir. 1992)).

"'It is well settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court.'"

11

*Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 204–05 (2d Cir. 2007) (alteration omitted) (quoting *J.S. ex rel. N.S.*, 386 F.3d at 112). "Failure to exhaust the administrative remedies deprives the court of subject matter jurisdiction." *Cave*, 514 F.3d at 245.

"The IDEA's exhaustion requirement was intended to channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances." *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 487 (2d Cir. 2002). Specifically, the "'[e]xhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children.'" *Id.* (quoting *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303 (9th Cir. 1992)).

"Importantly, complainants must overcome this significant procedural hurdle not only when they wish to file a suit under the IDEA itself, but also whenever they assert claims for relief available under the IDEA, regardless of the statutory basis of their complaint." *Cave*, 514 F.3d at 246; *see also* 20 U.S.C. § 1415. In other words, "the IDEA statute requires plaintiffs with any claims related to the education of disabled children, whether brought under IDEA or another statute (*e.g.*, the Rehabilitation Act), to exhaust the administrative remedies available under IDEA

12

prior to initiating a federal lawsuit." *Kalliope R. ex rel. Irene D. v. New York State Dep't of Educ.*, 827 F. Supp. 2d 130, 137 (E.D.N.Y. 2010); *see also C.K.*, 185 F. Supp. 3d at 325–26.

As noted, Plaintiffs do not dispute that their claims under the IDEA, the ADA, Section 504 and Section 1983 are all subject to the exhaustion requirement. However, they contend that exhaustion would be futile, a recognized exception to the exhaustion requirement. *See* Compl. ¶ 16.

To that end, the Second Circuit has recognized that "[t]he exhaustion requirement is excused when exhaustion would be futile because the administrative procedures do not provide an adequate remedy." *Cave*, 514 F.3d at 249 (citing *Honig*, 484 U.S. at 326-27, 108 S.Ct. at 606). "To show futility, a plaintiff must demonstrate that 'adequate remedies are not reasonably available' or that 'the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process.'" *Coleman*, 503 F.3d at 205 (quoting *J.G. v. Bd. of Educ. of Rochester City Sch. Dist.*, 830 F.2d 444, 447 (2d Cir. 1987)). "The party seeking to avoid exhaustion bears the burden of showing futility." *Cave*, 514 F.3d at 249 (citing *Polera*, 288 F.3d at 488 n.8).

One potential basis for futility is where a plaintiff alleges "systemic violations that could not be remedied by local or state administrative agencies 'because the framework and procedures for assessing and placing students in appropriate educational programs were at issue, or because the nature and volume of complaints were incapable of correction by the administrative hearing process.'" *Id.* (quoting *J.S.*

13

*ex rel. N.S.*, 386 F.3d at 114). "The rationale behind this exception is that while the administrative hearing officers have the authority to enforce established regulations, policies and procedures, they generally do not have the authority to set new policies or to alter existing ones." *King v. Pine Plains Cent. Sch. Dist.*, 918 F.Supp. 772, 781 (S.D.N.Y. 1996). Accordingly, "requiring a parent to exhaust his administrative remedies when he is challenging a generally applicable policy or procedure would be futile." *Id.*

For example, in *J.S. ex rel. N.S.*, the Second Circuit found that the claims of six students against a school district under the IDEA, the Rehabilitation Act and Section 1983 fell within the systemic violation exception to the exhaustion requirement because "the complaint d[id] not challenge the content of Individualized Education Programs, but rather the School District's total failure to prepare and implement Individualized Education Programs." 386 F.3d at 115. The complaint also included numerous examples of systemic problems at the school district, including:

> failure to perform timely evaluations and reevaluations of disabled children; failure to provide parents with required procedural safeguards regarding identification, evaluation, and accommodation of otherwise disabled children; and failure to perform legally required responsibilities in a timely manner, including providing and implementing transition plans, transitional support services, assistive technology services, and declassification services for children with disabilities.

*Id.*

On the other hand, courts in this Circuit have found that allegations of discrimination on the part of school districts are not sufficient to excuse the IDEA exhaustion requirement in cases where those allegations are tied to the events,

14

conditions or consequences of an individual student's IEP. That is because those complaints can be remedied at the administrative level and therefore, resort to the administrative process would not be futile. *See Baldessarre v. Monroe–Woodbury Cent. Sch. Dist.*, 820 F.Supp.2d 490, 505 (S.D.N.Y. 2011) ("Because all of Plaintiffs' claims of discrimination relate to the interplay between [the student's] disability and his education, whether the Amended Complaint adequately alleges facts sufficient to state a claim under these other statutes is entirely irrelevant."); *Wang v. Williamsville Cent. Sch. Dist.*, No. 08–CV–575S, 2010 WL 1630466, at *6 (W.D.N.Y. Apr. 21, 2010) ("Plaintiffs' attempt to recast their claims is unavailing. What they are alleging, in essence, is that the District knew it had certain obligations to [the student] because of his medical conditions, but it failed to act on that knowledge when it let another factor take precedence. The gravamen of their claim is the failure to provide appropriate services to [the student]; the purported reason for the failure – race discrimination – is secondary.").

In this case, while Plaintiffs assert that Westhampton discriminated against A.K. during the 2019-2020 academic year based on his disabilities in violation of the ADA and Section 504, and violated his due process and equal protection rights under Section 1983, their ultimate request as to their claims is that Defendants implement an appropriate IEP within the LRE which, according to Plaintiffs, is a hybrid program within the general education setting when appropriate, and within-District. This type of challenge to the placement of a disabled student is a matter that is within the ambit of the administrative scheme addressed by the IDEA, which explicitly provides

15

parents with an opportunity to present a complaint to an impartial IHO "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child[.]"  20 U.S.C.A. § 1415(b)(6)(A).

As such, Plaintiffs' issues with the District's justifications for A.K.'s IEP and academic placement must first be addressed to the local and state education agencies who are "uniquely well suited to review the content and implementation of IEPs . . . and to determine what changes, if any, are needed."  *Cave*, 514 F.3d at 248 (internal quotations and citations omitted).  The fact that the Parents believe such appeal will cause a delay that will span additional academic years does not give them the right to proceed to federal court and bypass the administrative process.  *See Hope v. Cortines*, 872 F.Supp. 14, 21 (E.D.N.Y. 1995), *aff'd*, 69 F.3d 687 (2d Cir. 1995) ("Plaintiffs in substance challenge the adequacy of the IEP created . . . and seek imposition of their own more expansive IEP.  This is precisely the type of remedy best fashioned by the educational experts skilled in developing such programs and provides a textbook example of the types of cases justifying administrative exhaustion.").  Accordingly, the Court recommends that all of Plaintiffs' causes of action be dismissed for lack of subject matter jurisdiction.

## IV. CONCLUSION

For the reasons stated above, the Court respectfully recommends that Defendants' motion to dismiss be granted as to all claims without prejudice until administrative remedies are exhausted.

## V. OBJECTIONS

A copy of this Report and Recommendation is being served on all parties by electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72; *Ferrer v. Woliver*, No. 05-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
February 11, 2021

/s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge